```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/23/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
TRUSTEES OF THE NEW YORK CITY :
DISTRICT COUNCIL OF CARPENTERS :
PENSION FUND, WELFARE FUND, :
ANNUITY FUND, AND APPRENTICESHIP, :
JOURNEYMAN RETRAINING, :
EDUCATIONAL AND INDUSTRY FUND, :
TRUSTEES OF THE NEW YORK CITY :
CARPENTERS RELIEF AND CHARITY :
FUND, CARPENTER CONTRACTOR :
ALLIANCE OF METROPOLITAN NEW :
YORK, and NEW YORK CITY DISTRICT :
COUNCIL OF CARPENTERS, :
:
                                                                            Petitioners, :
:
                   -against- :
:
P& J WOOD FLOORS, INC., :
:
                                                                            Respondent. :
-------------------------------------------------------------- X

1:22-cv-9386-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

       The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, the Trustees of the New York City Carpenters Relief and Charity Fund, the Carpenter Contractor Alliance of Metropolitan New York (the "Funds"); and the New York City District Council of Carpenters (the "Union," and together with the Funds, the "Petitioners") seek to confirm an arbitration award against P&J Wood Floors, Inc. ("P&J" or "Respondent") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the following reasons, the award is confirmed.

I.    BACKGROUND

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, and Apprenticeship, Journeyman Retraining and Educational and Industry Fund "are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ('ERISA')." Dkt. No. 13 ("Davidian Decl.") ¶ 4.  They are based in New York City.  *Id.*  The Trustees of the New York City Carpenters Relief and Charity Fund operate "a charitable organization established under section 501(c)(3) of the Internal Revenue Code."  *Id.* ¶ 5.  The fund is based in New York City.  *Id.*  The Carpenter Contractor Alliance of Metropolitan New York "is a labor management not-for-profit corporation . . . operating pursuant to Section 302(c)(9) of the LMRA."  *Id.* ¶ 6.  The Union "is a labor organization . . . and is the certified bargaining representative for certain employees of P&J Wood Floors, Inc."  *Id.* ¶ 7.

P&J is a domestic business corporation organized under the laws of the State of New York. Dkt. No. 1 ("Pet.") ¶ 7.  On March 11, 2020, Respondent entered into a collective bargaining agreement with the Union (the "CBA").  Davidian Decl. ¶ 8.  The CBA requires that P&J remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union.  Davidian Decl. ¶ 9; CBA Art. XI(A).  In order to verify that employers like P&J make their agreed upon contributions, the CBA requires each employer to furnish its books and payroll records when requested by the Funds for reviews and audits.  CBA Art. XI(A).

The CBA binds employers "to the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare Fund, and Pension Fund, Vacation Fund, Annuity Fund, U.B.C. & J.A. Fund, Apprenticeship, Journeyman Retraining, Education and Industry Fund, Supplemental Funds, and the New York City & Vicinity Labor- Management Cooperation Fund, as amended, and

by all By-Laws adopted to regulate each of said Funds." CBA Art. XI(D). The Agreements and Declarations of Trust of the relevant funds state that the Trustees may "promulgate such rules and regulations necessary to the effectuation of the purposes of this Agreement and Declaration of Trust." Dkt. No. 13, Exs. C-D, Art. VII, Sec. 1 (29); Dkt. No. 13, Ex. E, Art. VII, Sec. 1 (30); Dkt. No. 13, Ex. F, Art. VII, Sec. 1 (31). Among the Funds' rules and regulations is a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Davidian Decl. ¶ 11; Pet. Ex. G (Collection Policy).

The CBA provides that if a "dispute or disagreement arise[s] between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before [an] impartial arbitrator." CBA Art. XI(H).[1] The CBA and the Collection Policy also provide that in the event the Funds are "required to arbitrate a dispute or file a lawsuit over unpaid contributions," the Funds are entitled to collect more than the late contributions alone. Davidian Decl. ¶ 15. According to the Collection Policy, in addition to interest on the delinquent amount, the Funds are entitled to a "delinquency assessment." Collection Policy § IV ¶ 4. "The amount of the delinquency assessment shall be the greater of (a) interest on the delinquent contributions . . . or (b) liquidated damages in the amount of twenty percent (20%) of the principal amount of all delinquent contributions." *Id.* The "[i]nterest owed by a delinquent employer" is "calculated at the prime lending rate of Citibank plus 200 basis points, compounded daily, on a declining principal basis." *Id.* § V ¶ 1. In addition, the Collection Policy mandates that delinquent employers are liable for all attorneys' fees incurred by the Funds when trying to collect delinquent contributions. *Id.* ¶ 6. The Collection Policy also states that

---

[1] While the CBA lists Roger Maher, Richard Adelman, or Bonnie Weinstock as the designated arbitrators, the Collection Policy also lists J.J. Pierson as a designated arbitrator. *Compare* CBA Art. XI(H), *with* Collection Policy § VI ¶ 2. Where those documents conflict, the Collection Policy governs. *See* Collection Policy § IX(2); Davidian Decl. ¶ 19. Therefore, Petitioners' use of J.J. Pierson as the arbitrator complied with the terms of the agreements governing the arbitration.

3

delinquent employers are liable for "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions." *Id.* ¶ 7.

After Petitioners initiated arbitration, J.J. Pierson (the "Arbitrator") mailed P&J notice of the arbitration hearing in a letter dated June 13, 2022. Pet. Ex. H. The Arbitrator conducted the hearing on July 12, 2022, at which P&J did not make an appearance. Pet. Ex. I at 1. In an August 11, 2022 decision, the Arbitrator determined that P&J had violated the CBA by failing to remit accurate and timely contributions for the pay periods of March 11, 2020 through June 25, 2021, and awarded the Funds $115,264.89. *Id.* at 2–3. In addition to the principal amount of $84,312.40, the Arbitrator awarded $7,546.91 in interest, $16,862.48 in liquidated damages, $698.10 in promotional fund contributions, $400 in court costs, $1,500 in attorneys' fees, a $1,000 arbitrator's fee, and $2,945 in audit costs. *Id.* at 3; Davidian Decl. ¶ 21.

Petitioners ask the Court to confirm the award, updated in light of additional court costs and attorneys' fees. Dkt. No. 19 ("Proposed J."). Petitioners propose that the award should reflect (a) $115,264.89—the original award—plus interest accrued at the annual rate of 6.75% since the award date; (b) $86.55 in costs from the proceedings; (c) $3,918 in attorneys' fees; and (d) post-judgment interest at the statutory rate for civil awards under 28 U.S.C. § 1961. *Id.*

The requested attorneys' fees are based on 15.6 hours of work. Dkt. No. 14 ("Moosnick Decl.") ¶ 11. Petitioner's counsel billed at the rates of $275 for work performed by an associate, and $120 per hour for work performed by a legal assistant. *Id.* ¶¶ 7-9; *see also* Dkt. No. 14, Ex. K ("History Bill for the Ct."). The "rates are the result of negotiations between [counsel] and the [Petitioners]." Moosnick Decl. ¶ 10. Petitioners' counsel consisted of Maura Moosnick and Matthew Vani, two associates at Virginia & Ambinder LLP ("V&A"), and two legal assistants. *Id.* ¶¶ 7-9.

4

Petitioners filed a petition to confirm the arbitration award on November 2, 2022.  *See* Pet. Petitioners moved for summary judgment on November 25, 2022.  Dkt. No. 12.  P&J has not entered an appearance or made any filings with the Court, despite being properly served with the complaint, motion, and all relevant filings.  *See* Dkt. Nos. 10, 18, 20.

## II.     LEGAL STANDARD

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court."  *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited."  *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).  Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.*  It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute."  *Id.* at 537.  Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'"  *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a

barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

Furthermore, "an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### III. DISCUSSION

#### A. Confirmation of the Arbitration Award

Here there is no indication that the Arbitrator's award was procured through fraud or dishonesty or that the Arbitrator was acting in disregard of the CBA or outside the scope of his broad authority as arbitrator. Rather, the record indicates that the Arbitrator based his award on undisputed evidence that the Funds conducted an audit in accordance with the terms of the CBA and determined that P&J had been delinquent in its contributions to the funds between March 11, 2020 through June 25, 2021. *See* Award at 2. The record also indicates that the Arbitrator based the

amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *See* Award at 1-3. Accordingly, the Court grants Petitioners' motion and confirms the Award, including pre-judgment interest at a rate of 6.75% per annum from the date of the award through the date of judgment in this action.

### B. Post-Judgment Interest

Petitioners further request post-judgment interest accruing from the date of judgment until P&J pays in full. Proposed J. at 1. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this mandate applies when confirming arbitration awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### C. Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Proposed J. at 1. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for recovery of attorneys' fees. *See id.* "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M.S. Meat Corp.*, No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal quotation marks omitted) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-cv-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees." *Id.* But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioners'] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06-cv-5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, an award of attorneys' fees and costs is warranted. By entering into the CBA, P&J agreed to submit all disputes to binding arbitration. Further, both the CBA and the Funds' Collection Policy explicitly entitle Petitioners to recover reasonable attorneys' fees and costs incurred while collecting delinquencies. *See* CBA Art. XIV § 2; Collection Policy § VI. Respondent has neither fully complied with the award nor provided any justification for its failure to do so. For these reasons, the Court finds that it is just and reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the

rate unreasonable in the relevant market. *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05-cv-5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)), *report and recommendation adopted*, No. 05-cv-5546, 2008 WL 2940517 (S.D.N.Y. July 29, 2008). To assist the Court in determining the appropriate award, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee. *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request is largely reasonable, subject to the reductions in counsels' billing rates outlined below. Petitioners request $3,918 in attorneys' fees and $86.55 in costs incurred by bringing this petition. *See* Proposed J. at 1; Moosnick Decl. ¶¶ 11, 12. Petitioners submitted invoices documenting the specific tasks performed, the number of total hours worked (15.6), and hourly rates for the two attorneys and the two legal assistants who worked on the case. *See* History Bill for the Ct. These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the award. *See id.*

Furthermore, these fees and costs "are the result of negotiations between [Petitioners' attorneys] and the [Petitioners] regarding the proper hourly rates" for these legal services. Moosnick Decl. ¶ 10. The Court also concludes that 15.6 hours is a reasonable number of hours worked given the description of the tasks performed. *See Flores v. J&B Club House Tavern, Inc.*, No. 10-cv-4332, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (noting that, in determining whether listed hours are reasonable, "[t]he critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures") (internal quotation marks and citation

9

omitted); History Bill for the Ct. (detailing the precise tasks that were undertaken during the 15.6 hours of work related to bringing this petition).

The fees are based on the following rates: $275 per hour for Ms. Moosnick, an associate who graduated from law school in 2021; $275 per hour for Mr. Vani, a law clerk awaiting admission who graduated from law school in 2022; and $120 per hour for the legal assistants. *See id.* ¶¶ 7–9; History Bill for the Ct.

The requested rate of $120 per hour for the work performed by legal assistants is reasonable. *See, e.g., Rosales v. Gerasimos Enters., Inc.*, No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 18, 2018) (noting that hourly rates of between $100 and $150 have been found to be reasonable for paralegals); *S.J. v. N.Y.C. Dep't of Educ.*, No. 20-cv-01922, 2020 WL 6151112 (S.D.N.Y. Oct. 20, 2020) (recommending $125 as the hourly rate to be awarded to paralegals), *report and recommendation adopted as modified by* 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021).

However, the Court does not approve of the $275 per hour rate for Ms. Moosnick and will reduce her rate to $225 per hour. The latter rate is the more appropriate one for associates with Ms. Moosnick's experience, as a court in this district recently concluded regarding Ms. Moosnick herself. *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Genrus Corp.*, No. 22-cv-4886, 2022 WL 3536134, at *5 (S.D.N.Y. Aug. 18, 2022) (reducing Ms. Moosnick's rate from $275 to $225); *see also Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Triangle Enter. NYC, Inc.*, No. 20-cv-793, 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (lowering the rate of an associate with similar experience from $275 to $225); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Exposition Servs., Inc.*, No. 19-cv-149, 2019 WL 2004279, at *4 (S.D.N.Y. May 7, 2019) (same); *Trs. of N.Y.C. Dist.*

10

*Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. DV I, LLC*, No. 17-cv-7367, 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018) (holding that $225 per hour is an appropriate rate for "similarly situated" associates); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. AMP&G Constr., LLC*, No. 17-cv-4729, 2018 WL 1883450, at *4 (S.D.N.Y. Mar. 29, 2018) (same).

Mr. Vani's $275 hourly rate is too high for a first-year law clerk who has not yet been admitted to the bar. As a result, the Court will reduce his rate to $150 per hour. That rate is more appropriate for a first-year law clerk in this practice area for this cut and dry case. *See Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Triple H Concrete Corp.*, No. 15CIV6687ARRVMS, 2018 WL 1178036, at *11 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, No. 15-CV-6687 (ARR), 2018 WL 1175151 (E.D.N.Y. Mar. 6, 2018) ("Indeed, in this Circuit, courts have reduced the hourly rate of V&A's first-year law clerks and recently-graduated associates to $100"); *see also Kadden v. VisuaLex, LLC,* No. 11 CIV. 4892 SAS, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) ("Regardless of the level of skill he displays, a law clerk cannot expect to garner fees similar to those earned by a junior associate who is licensed to practice law. Courts in this district have found that fees in the area of $80 to $150 are reasonable for law clerks").

Finally, Petitioners request the reimbursement of $86.55 in court costs resulting from serving P&J with the petition to confirm the arbitration award and court fees. Moosnick Decl. ¶ 12; Proposed J. at 1. Courts in this district routinely permit the recovery of such costs. *New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016). The Court will therefore order reimbursement of that amount.

Accordingly, Petitioners' request for attorneys' fees and costs is granted, but with the reduced rate of $225 per hour for Ms. Moosnick's work and $150 per hour for Mr. Vani's work. Petitioners are therefore entitled to $2,391 in attorneys' fees and $86.55 in costs.

11

**IV.     CONCLUSION**

For these reasons, the petition to confirm the arbitration award is GRANTED.  The Clerk of Court is directed to enter judgment of $117,742.44, which consists of the arbitration award of $115,264.89, attorneys' fees of $2,391, and costs in the amount of $86.55.  Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 12 and to close this case.

SO ORDERED.

Dated:  February 23, 2023
        New York, New York

_____
GREGORY H. WOODS
United States District Judge